## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

Earl Gene Neeley                                                                          Plaintiff

v.                                          No. 4:14-CV–87-JM-JTR

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration                                                   Defendant

### Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge James M. Moody, Jr.  A party to this dispute may file written objections to this recommendation.  An objection must be specific and state the factual and/or legal basis for the objection.  An objection to a factual finding must identify the finding and the evidence supporting the objection.  Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1]  The objecting party must serve the opposing party with a copy of an objection.  Failing to object within 14 days waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Moody may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

## Reasoning for Recommended Disposition

Earl Gene Neeley seeks judicial review of the denial of his second application for social security disability benefits.[3] Neeley has worked primarily as a truck driver.[4] He hasn't worked since contracting a rare gangrene of the external genitalia. Shortly after being diagnosed and treated, Neeley applied for disability benefits. He based disability on diabetes, sleep apnea, and gangrene in the scrotum.[5]

**The Commissioner's decision**. After considering the application, the Commissioner's ALJ determined Neeley has severe impairments — degenerative joint disease in the left knee; chronic neck, shoulder, and back pain; history of Fournier's gangrene, status post surgery; obstructive sleep apnea; and obesity[6] — but he can do some light work.[7] Because a vocational expert identified available light work,[8] the

---

[3]SSA record at p. 121 (applying on Aug. 18, 2011 and alleging onset beginning Aug. 1, 2011). Neeley first applied for disability benefits on May 15, 1998, based on sleep apnea. That application was denied on Nov. 19, 1998. Neeley worked as a truck driver for many years since then. *Id*. at pp. 123, 147 & 426.

[4]*Id*. at pp. 150, 160 & 168.

[5]*Id*. at p. 159.

[6]*Id*. at p. 11.

[7]*Id*. at p. 12.

[8]*Id*. at pp. 48-49.

ALJ determined Neeley is not disabled and denied the application.[9]

After the Appeals Council denied review,[10] the ALJ's decision became the Commissioner's final decision for the purpose of judicial review.[11] Neeley filed this case to challenge the decision.[12] In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[13] This recommendation explains why substantial evidence supports the decision and why the ALJ made no legal error.

**Neeley's allegations**. Neeley challenges the determination that he could work during the time period for which benefits were denied. This point is relative to Neeley's argument because the Commissioner granted Neeley's third application and

---

[9]*Id*. at p. 17.

[10]*Id*. at p. 1.

[11]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[12]Docket entry # 1.

[13]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

awarded benefits beginning the day after the date of the challenged decision.[14] Neeley

claims he was unable to walk enough to do light work.  According to Neeley, the ALJ

determined he could do light work to avoid finding he was disabled under the

Medical-Vocational Guidelines.[15]  Neeley contends the ALJ should have asked his

treating physicians about his ability to work.  He maintains the medical examiner's

medical statement deserved more weight.  He says the ALJ failed to consider the

combination of his impairments in determining whether he met a listed impairment.

He maintains the ALJ failed to resolve a conflict between the vocational evidence and

the Dictionary of Occupational Titles (DOT).  For these reasons, he argues, substantial

evidence does not support the ALJ's decision.[16]

**Applicable legal principles**.  For substantial evidence to support the decision,

a reasonable mind must accept the evidence as adequate to show Neeley could do

some light work[17] for a continuous period of not less than 12 months.[18]  "Light work

---

[14]Docket entry # 12.

[15]Chronological age is one of the vocational factors considered in determining whether a claimant is disabled, because age affects a person's ability to adjust to other work.  Neeley was considered a younger individual under the Medical-Vocational Guidelines when he became ill; he changed age categories during the pendency of his application.

[16]Docket entry # 11.

[17]*See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as

involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[19]   The ALJ limited light work by requiring no more than occasional climbing, balancing, stooping, kneeling, crouching, or working/reaching overhead.[20]   The court must determine whether a reasonable mind would accept the evidence as adequate to show Neeley could work within these limitations.

**A reasonable mind would accept the evidence as adequate because Neeley's impairment did not prevent light work for 12 continuous months**.   An ALJ's determination about a claimant's ability to work must be supported by medical evidence; a claimant's subjective allegations are not enough to prove he is disabled.[21]

---

adequate to support a conclusion.'") (internal citation omitted).

[18]*See* 42 U.S.C. § 1382c(a)(3)(A) (specifying duration requirement for disability benefits).   *See also* 20 C.F.R. § 404.1505(a) ("The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.").

[19]20 C.F.R. §§ 404.1567(b) & 416.967(b).

[20]SSA record at p. 12.

[21]42 U.S.C. § 423 (d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged and which…would lead to a conclusion that the individual is under a disability"); 20

The medical evidence shows Neeley was treated for Fournier's gangrene[22] — "a 'flesh-eating' disease in which the infection encompasses the external genitalia."[23] Unless aggressively treated, the infection can spread and cause multiple organ failure, a common cause of death in patients with Fournier's gangrene.[24] People with diabetes face an increased risk of Fournier's gangrene.[25]

Neeley has diabetes.  When he contracted Fournier's gangrene, he was not

---

C.F.R. §§ 404.1508 & 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); 20 C.F.R. §§ 404.1529 & 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.").

[22]SSA record at pp. 355-56.

[23]Johnson, Paul A., 3 The Gale Encyclopedia of Med. 1748 (4th ed.); Draion M. Burch, Timothy J. Barreiro & Vincent W. Vanek, *Fournier's gangrene: Be alert for this medical emergency*, 20 J. Am. Acad. Physician Assistants 44 (Nov. 2007).

[24]A. Thwaini, A Khan, A. Malik, J. Chreian, I. Shrgill & K. Mammen, *Fournier's gangrene & its emergency management*, 82 Postgraduate Med. J. 516, 517 (2006).

[25]*Id*. at p. 516.

taking his diabetes medication.[26]  His blood sugar was elevated.[27]  Neeley's infection spread quickly,[28] so quickly that he lost his scrotum.  Surgeons administered antibiotics and removed infected tissue.[29]  The testicles were relocated from the scrotum to pouches in the thighs.[30]  Blood sugar stabilized.  Neeley's wounds healed without complication.[31]

A few months later, Neeley underwent reconstructive surgery.[32]  The right testicle was relocated using right-side scrotal tissue; the left testicle, using skin from the buttocks.[33]  Neeley's surgical wounds healed without complication; pain resolved.

---

[26]SSA record at p. 352 (he stopped taking prescribed medication for blood sugar control three months ago; he doesn't check his blood sugar).

[27]*Id*. at p. 377 (blood sugar on admission was 283; he quit taking his medication; restarted on blood sugar medicine; blood sugar control initiated).

[28]*Id*. at p. 298 (cellulitis spread two inches beyond marked site), p. 299 (infection spread fours hours since marking) & p. 257 (necrotic tissue appears to continue to spread, backing down his perineum toward his anus).

[29]*Id*. at pp. 257 & 266.

[30]*Id*. at p. 264.

[31]*Id*. at p. 390.

[32]*Id*. at p. 461.

[33]*Id*. at p. 469 ("The right scrotal compartment still has some scrotal skin that can accommodate the right testicle without further mobilization.  The left testicle currently lies in a thigh pouch with no adequate skin that can be pulled.") & p. 482 ("He underwent a reconstruction of the scrotum from the thigh pouches using buttock flaps….").

Neeley and his wife were happy with the results.[34]  This progress occurred in less than 12 months.

Neeley's argument for judicial review focuses on testicular pain he claims prevented him from walking enough to do light work.  Being able to walk is important to Neeley's claim because many light work jobs require a good deal of walking, although in others the ability to stand is more critical than the ability to walk.[35]  "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."[36]

As proof, Neeley relies on the following treatment note: "He is having some irritation from the left testicle, particularly when he is [] walking for some distance because of pain that sometimes happens when the testis hits the other leg."[37]  "Pain that sometimes happens" doesn't equate to pain preventing walking. Earlier treatment notes report no problems with pain or walking.[38]  Moreover, the testicles were

---

[34]*Id*. at p. 487 (May 3, 2012: healing quite nicely) & p. 491(June 14, 2012: healed quite nicely without problems).

[35]SSR 83-10, *Titles II & XVI: Determining Capacity to Do Other Work -- The Medical-Vocational Rules of App'x 2*.

[36]*Id*.

[37]SSA record at p. 449.

[38]*Id*. at p. 361(Aug. 26, 2011, two weeks after hospitalization: he reported difficulty walking; unsteady gait observed), pp. 387-88 (Sept. 9, 2011: no pain

relocated the following month.[39]  One month after reconstructive surgery, Neeley had

no testicular pain; he walked without difficulty.[40]  To the extent Neeley had problems

walking, he attributed those problems to shortness of breath, not testicular pain.[41]

Treatment records contradict Neeley's claim.

Neeley says the ALJ should have asked his doctors about his physical abilities

using written interrogatories — because his University of Arkansas Medical Sciences

(UAMS) doctors don't complete medical source statements for patients — but the

ALJ had sufficient information to determine whether Neeley was disabled.[42]  UAMS

treatment notes are detailed, descriptive, and legible.   Treatment notes include

reported  symptoms,  progress  reports,  examination  findings,  laboratory  results,

---

reported; patient ambulates without difficulty; steady gait) & p. 393 (Oct. 13, 2011:
no pain reported; steady gait).  *See also id.* at p. 482 (before reconstruction surgery,
he complained about testicular pain when sitting, when the testicles get compressed)
& p. 491 (before reconstructive surgery, he complained about testicular pain in certain
positions).

[39]*Id.* at p. 461.

[40]*Id.* at pp. 485-87 (May 3, 2012: ambulates without difficulty; steady gait; no
complaints of testicular pain).

[41]*Id.* at p. 40.

[42]*Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) ("The ALJ is required
to order medical examinations and tests only if the medical records presented to him
do  not  give  sufficient  medical  evidence  to  determine  whether  the  claimant  is
disabled.").

treatment recommendations, and operative reports.  The critical issue — the effect of Fournier's gangrene, Neeley's primary impairment — was fully developed.[43]

To the extent the record was lacking, the ALJ ordered a consultative physical exam.  The examiner had two negative medical findings: mild range of motion stiffness of flexion in the low back[44] and diminished range of motion in rotation in the neck.[45]  According to the examiner, the scrotum "appears well healed."[46]  The examiner completed a medical source statement, but indicated he had little confidence in validity of reported limitations,[47] as the limitations were based in significant part on Neeley's statements.  Under these circumstances, the examiner's statement justified no additional weight.

Moreover, the examiner's findings did not support the reported limitations. Diagnostic imaging of the spine was negative except for some "minuscule" bone

---

[43]*Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) ("An ALJ should recontact a treating or consulting physician if a critical issue is undeveloped."); *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (ALJ doesn't have to seek clarification from treating physician unless crucial issue is undeveloped).

[44]SSA record at p. 563.

[45]*Id*. at p. 561.

[46]*Id*. at p. 562.

[47]*Id*. at p. 571.

spurs.[48]   Diagnostic imaging of the left knee showed moderate degenerative joint disease.[49]  These findings represent degenerative changes that did not prevent Neeley from working before Frounier's gangrene; before his illness, he worked every day with no big problems.[50]  He worked 60 hours/week.[51]  Neeley's report before his illness contradicts his claim of disabling symptoms from other impairment.  By requiring occasional climbing, balancing, stooping, kneeling, crouching, and working/reaching overhead, the ALJ gave Neeley the benefit of more impairment than the medical evidence shows.

The benefit leads to Neeley's argument about a conflict between the vocational evidence and the DOT.  The ALJ asked the vocational expert about work involving occasional overhead working/reaching.  According to Neeley, the vocational expert identified jobs requiring frequent reaching.[52]  This testimony, he says, created an unresolved conflict because the DOT identifies frequent reaching as a job requirement, without distinguishing whether the jobs require frequent "overhead

---

[48]*Id*. at p. 565.

[49]*Id*.

[50]*Id*. at p. 165.

[51]*Id*. at p. 177.

[52]*Id*. at pp. 48-49 (identifying storage facility rental clerk and routing clerk as available representative jobs).

reaching and front or side reaching." He faults the ALJ for failing to question the vocational expert about the conflict.

An ALJ's failure to question the vocational expert about a conflict is harmless if no conflict exists.[53]  No conflict exists because the DOT doesn't address reaching in describing the representative jobs.  Neeley's argument is based on Skilltran's Job Browser Pro, not the DOT.[54]  Skilltran identifies frequent reaching as a physical demand for both identified jobs, but its job descriptions implicate no overhead reaching.[55]  No conflict exists if a job requires no overhead reaching.

Even if some jobs require overhead reaching, the vocational expert confirmed that a person who is limited to occasional overhead working/reaching can do the identified jobs.  There's no doubt the vocational expert understood the ALJ's parameters because occasional overhead working/reaching was the ALJ's initial limitation.  To the extent there was an error, the limitation was the error.  Neeley reported no limitations in reaching.[56]  Treatment records reflect no limitations in

---

[53]*See Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007).

[54]Docket entry # 11, attach. 1 & 2.

[55]*Id.*

[56]SSA record at p. 191.

reaching.  The physical examiner reported no limitations in reaching.[57]  Diagnostic imaging of the neck was negative.[58]

### Conclusion and Recommended Disposition

A reasonable mind would accept the evidence as adequate to support the decision because nothing shows Neeley's impairments prevented him from working for 12 continuous months.  Treatment notes show Neeley recovered from Fournier's gangrene in less than 12 months.  That recovery undermines any argument that Neeley met a listed impairment based on a combination of impairments.  Neeley may have developed other impairment that served as the basis for a subsequent award, but that evidence is not before the court.  Substantial evidence supports the ALJ's decision.  The ALJ made no legal error.  For these reasons, the undersigned magistrate judge recommends DENYING Neeley's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

Dated this 6th day of May, 2015.

_____
United States Magistrate Judge

---

[57]*Id*. at p. 568.

[58]*Id*. at p. 565.